**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Lynn Butler,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-18-01813-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Cynthia Lynn Butler's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 16, "Def.'s Br."), and Plaintiff's Reply (Doc. 20, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 9, R.) and now reverses the Administrative Law Judge's decision (R. at 19–31) as upheld by the Appeals Council (R. at 1–4).

**I.  BACKGROUND**

Plaintiff filed her initial application on May 10, 2010 for a period of disability beginning February 1, 2010. (R. at 94.) Her claim was denied initially on September 2, 2010, and upon reconsideration on February 22, 2011 (R. at 94.) She then testified at a hearing held before an Administrative Law Judge ("ALJ") on October 18, 2011 (R. at 94.)

where the ALJ found Plaintiff disabled from February 1, 2010 through May 30, 2011. (R. at 95.)

Plaintiff subsequently filed another application on September 7, 2012 for a period of disability beginning October 19, 2011. (R. at 132.) Her claim was denied initially on January 9, 2013, and upon reconsideration on August 30, 2013. (R. at 132.) She then testified before an ALJ on November 13, 2014, and on February 20, 2015, the ALJ concluded Plaintiff was not disabled from September 7, 2012 through the date of decision. (R. at 132.) Plaintiff appealed, and, upon review, the Appeals Council remanded the case back to an ALJ for reconsideration. (R. at 149.)

On June 13, 2017, Plaintiff appeared before an ALJ to testify (R. at 19), and on October 2, 2017, the ALJ concluded Plaintiff was not disabled (R. at 31). Plaintiff then appealed the ALJ's decision on October 31, 2017 (R. at 5), and the Appeals Council denied her request for review (R. at 1). The present appeal followed.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ found that Plaintiff has the following impairments: cervical dystonia, migraine headaches, and benign essential tremor. (R. at 22.) He also found that Plaintiff has a sedentary residual functional capacity ("RFC") with postural, manipulative, and environmental limitations. (R. at 26.) Lastly, based on a vocational expert's analysis of Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could work as a general office clerk, addresser, and document preparer, and is not disabled under the Act. (R. at 30.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the treating physician's assessments, instead according partial weight to examining and nonexamining physicians; and (2) the ALJ erred in rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Pl.'s Br. at 12–23.)

### A. The ALJ Erred by Discrediting the Opinions of Plaintiff's Treating Physician

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the opinion of Dr. Samanta, Plaintiff's treating neurologist, was controverted by examining and nonexamining physicians. Thus, the ALJ was required to provide specific and legitimate reasons for his decision to give "little weight to the opinions of Dr. Samanta." (R. at 27.) The ALJ afforded Dr. Samanta's opinions little weight because they were "inconsistent with his own treatment notes." (R. at 27.) The ALJ cited the following

inconsistencies between Dr. Samanta's treatment notes and his opinion that Plaintiff was disabled: (1) Plaintiff "received Botox injections for her symptoms and reported improvements following such injections;" (2) Plaintiff "would miss 25 days" of work per month "because of migraine headaches," but "only reported taking aspirin for [her] migraine headaches;" and (3) Dr. Samanta's "opinions were based upon [Plaintiff's] alleged diagnosis of Parkinson's disease," but "his treatment notes do not detail that [Plaintiff] was ever diagnosed with Parkinson's disease." (R. at 27.) The ALJ found that Dr. Samanta's notes regarding Plaintiff's response to Botox "do not contain examinations of [Plaintiff] that would support any of the limitations opined by Dr. Samanta." (R. at 27.) Instead, the ALJ determined that Dr. Samanta's "opined limitations appear to be primarily based upon [Plaintiff's] subjective complaints." (R. at 27.)

Alternatively, the ALJ gave "partial weight" to the opinion of Dr. Hunter, a state agency examining physician, who opined that Plaintiff could perform "medium work." (R. at 27.) Although he opined that Plaintiff "could not sort, handle, or use paper files," he proffered that she could "frequently handle and finger bilaterally; frequently climb ladders or scaffolds; occasionally be exposed to unprotected heights; [and] frequently be exposed to moving mechanical parts." (R. at 27.) The ALJ determined these findings were consistent with Plaintiff's reported relief from Botox for her cervical dystonia and conservative treatment for migraines. (R. at 27.) However, the ALJ "declined to adopt" Dr. Hunter's limitations regarding paper files because Plaintiff "testified that she could pick up and handle paper." (R. at 27.)

Lastly, the ALJ also gave "partial weight" to the opinions of Drs. Davidson and Roberts, state agency non-examining physicians, who each believed Plaintiff could perform "light work." (R. at 26.) Dr. Davidson opined that Plaintiff could "occasionally balance, climb stairs, ramps, ladders, ropes, and scaffolds; occasionally reach overhead bilaterally; and should avoid concentrated exposure to hazards," all of which Dr. Roberts "concurred with." (R. at 26.) Again, the ALJ determined such opinions were "generally consistent" with Plaintiff's reported relief from Botox for her impairments. (R. at 26.)

Plaintiff argues that the ALJ failed to provide specific and legitmate reasons to discount the opinions of Dr. Samanta because though "there are scattered notes of favorable response to Botox injections in the record, . . . the few notations of response to treatment did not indicate that [her] condition was improved such that she could work." (Pl's. Br. at 13.) In response, Defendant asserts that "the ALJ found that Plaintiff's symptoms were well-controlled with treatment" because Plaintiff "consistently informed her treatment provider that Botox injections resulted in marked—or the maximum possible—improvement in her functioning during the relevant period." (Def's. Br. at 3.)

A positive response to treatment is not a legitimate reason for disregarding a treating physician's opinion, particularly when "[n]o physician opined that any improvement would allow [Plaintiff] to return to work." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). Here, although Plaintiff indicated that she experienced "marked benefit" from Botox injections, the record does not state that improvement in Plaintiff's symptoms would enable her to work, and such improvement on its own is not necessarily indicative of one's capacity to work. In *Wellington v. Berryhill*, cited by Defendant, the Ninth Circuit stated that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." 878 F.3d 867, 876 (9th Cir. 2017). However, *Wellington* is distinct from this case because it involved a plaintiff with a mental disorder who, "[w]ith adequate treatment," could "return to a level of function close to the level of function [she] had before [she] developed symptoms or signs of [her] mental disorders." *Id.* Here, Plaintiff has a physical impairment. (R. at 22.) Moreover, such treatment did not return her to a level of function close to the level she maintained prior to developing her symptoms. Indeed, the record shows that Plaintiff experienced "more" and "increased" tremors despite treatment. (R. at 519, 562.)

In setting out a detailed and thorough summary of the facts and conflicting evidence, "[t]he ALJ must do more than state conclusions." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* Here, the ALJ failed to explain with specificity his

reasoning for giving little weight to Plaintiff's treating physician. The conclusion that the examining and nonexamining physicians' opinions are consistent with Plaintiff's responses to Botox treatment is not a legitimate reason for rejecting the opinions of Plaintiff's treating physician. The ALJ's reference to his own observations of Plaintiff at the hearing is also insufficient because it includes no cite to the record for support nor an explanation of what the ALJ observed. See *Lee v. Colvin*, No. CV-13-00759-PHX-DGC, 2014 WL 268572 at *3 (D. Ariz. Jan. 24, 2014) (affirming denial of plaintiff's disability benefits where, among six other reasons to discredit plaintiff's testimony, the ALJ observed plaintiff to be a "very healthy young woman who displayed no discomfort or pain" at hearing) (*aff'd by* 633 Fed. Appx 427, 428 (9th Cir. 2016)).

Further, the ALJ's reasoning regarding Parkinson's disease is without merit. The ALJ discredited Dr. Samanta's opinion in part because the doctor's notes briefly mention Parkinson's, but Plaintiff has never been diagnosed with the disease. (R. at 27.) An ALJ may disregard the opinion of a treating physician when the record contains "little objective evidence of an impairment" that supports the alleged disability. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). However, Dr. Samanta's conclusions regarding Plaintiff's impairments are not based on that treatment note. Moreover, Dr. Samanta never asserted that Plaintiff has Parkinson's disease. He merely described the illness in an optional remarks section of one treatment note, and the record does not explain—nor did the ALJ inquire into—the reasoning behind that note. (R. at 579.) As Plaintiff's treating neurologist, the fact that Dr. Samanta did not diagnose Plaintiff with Parkinson's disease and never mentioned it again in treatment notes, indicates that he did not base his opinion of Plaintiff's proffered limitations on the disease. Thus, one isolated reference to Parkinson's disease is not a specific and legitimate reason to discount Dr. Samanta's opinion.

**B.     The ALJ Erred in Discrediting Plaintiff's Symptom Testimony**

Plaintiff also argues that the ALJ erred in his consideration of Plaintiff's symptom testimony. (Pl's. Br. at 19–24.) An ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's

- 7 -

symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.*

Defendant argues that there are inconsistencies in the record that undermine the severity of Plaintiff's impairment and her symptom testimony. (Def's. Br. at 3.) Particularly, Defendant points to Plaintiff's positive response to Botox, minimal treatment for migraines, and admitted activities. (Def's. Br. at 3–5.) Defendant is correct that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Further "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

But here, the Court finds that the ALJ failed to cite any evidence indicating that Plaintiff's condition improved after treatment or that her daily activities suggest she is not disabled. The record does not show that Plaintiff's treatment was entirely successful because she continued to exhibit further symptoms despite Botox. Moreover, the ALJ failed to provide, with specificity, his reasoning for the conclusion that Plaintiff's use of aspirin "suggest[s] that such migraine headaches are not as severe as alleged." (R. at 29.) The ALJ does not cite any medical evidence that would explain why he believes the alleged severity of Plaintiff's migraines call for treatment greater than aspirin. *See Maydanis v. Colvin*, 119 F.Supp.3d 969, 976 (D. Ariz. 2015) (holding that an ALJ "must not succumb to the temptation to play doctor and make his own independent medical findings").

Lastly, substantial evidence does not support the ALJ's determination that Plaintiff's allegations are inconsistent with her admitted activities. *See Burrell v. Colvin*,

775 F.3d 1133, 1138 (9th Cir. 2014) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"). In support of his opinion, the ALJ stated only that Plaintiff "quit her volunteer job based upon her perceived difficulties with the tasks presented, rather than because she was requested to stop." (R. at 29.) This alleged inconsistency is not specific enough. If anything, Plaintiff's reasons for quitting are consistent with the purported severity of her impairment and her symptom testimony. Consequently, the ALJ erred by failing to provide the requisite specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

### C. The Credit-as-True Rule Applies

Having determined that the ALJ erred in rejecting Dr. Samanta's opinion and Plaintiff's symptom testimony, the Court now turns to Plaintiff's argument that the proper remedy is to remand for payment of benefits. (Pl's. Br. at 25.) Generally, remand for further administrative proceedings is the appropriate remedy if enhancement of the record would be useful. *Id*. However, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996); *Varney v. Sec'y of Health & Human Servs.,* 859 F.2d 1396, 1399 (9th Cir. 1988). More specifically, the district court should credit evidence that was rejected during the administrative process as true and remand for an immediate award of benefits when (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited as true. *Harman,* 211 F.3d at 1178; *see also McCartey v. Massanari,* 298 F.3d 1072, 1076–77 (9th Cir. 2002).

The credit-as-true rule applies in this case. The ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician and Plaintiff's symptom testimony. Plaintiff's treating physician opined that Plaintiff's impairments

"would result in an average of 25 absences from work per month." (R. at 575.) Plaintiff herself also sought work by volunteering but has stated she "cut back volunteering to [twice a] month" because she "had been doing too much" and that her migraines and tremors were the causes. (R. at 549.) If this evidence is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her physical limitations—which the Court credits as a matter of law—and the fact that Plaintiff has previously been found disabled due to her impairments, the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1022–23; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 & n.12 (9th Cir. 2007).

**IV. CONCLUSION**

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits under the Act and remand for a calculation of benefits.

IT IS THEREFORE ORDERED reversing the October 2, 2017 decision of the Administrative Law Judge, (R. at 19–31), as upheld by the Appeals Council on April 10, 2018 (R. at 1–4).

IT IS FURTHER ORDERED remanding this case to the Social Security Administration for a calculation of benefits.

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 12th day of July, 2019.

Honorable John J. Tuchi
United States District Judge